**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| JOSE SANCHEZ, | : | |
|---|---|---|
| Plaintiff | : | CIVIL ACTION NO. 3:18-1555 |
| v. | : | (JUDGE MANNION) |
| JOHN WETZEL, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

**I.   BACKGROUND**

Plaintiff, Jose Sanchez, an inmate formerly confined at the Rockview State Correctional Institution (SCI-Rockview), Huntingdon, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1). The action proceeds via an amended complaint, filed on June 28, 2019. (Doc. 24). The named Defendants are the following SCI-Rockview employees: Mark Garman, Superintendent; Douglas R. Sampsel, CFMMI;

---

[1] Plaintiff is currently housed at the State Correctional Institution, Houtzdale, Pennsylvania.

Mr. Detweiller, Maintenance Safety Inspector; and Mr. Ritchner, Plumbing Trades Instructor. Id.

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 25). The motion is fully briefed, and for the reasons that follow, the Court will grant Defendants' motion to dismiss.

## II. ALLEGATIONS IN AMENDED COMPLAINT

The Plaintiff alleges that on, or about April 28, 2017, at approximately 1:00 pm, Plaintiff was assigned to the plumbing maintenance crew to conduct work in the activities department of SCI-Rockview. (Doc. 24). He states that the work to be completed "was that the crew was to shut down the hot water within a cluster of pipes in order to work on the piping system." Id.

Plaintiff claims that he was "standing next to the boiler waiting for Mr. Ritchner, his supervisor, to shut the hot water off by closing a valve" when "the valve instead released hot water from the boiler and burned Plaintiff." Plaintiff's co-worker, inmate Tommy Williams, was also present as hot scorching water exploded from the boiler causing Plaintiff to sustain second degree burns to his stomach, left arm and a few other body areas." Id.

Plaintiff was immediately taken to the medical department "and due to his injuries and the pain he was in, Plaintiff was transported by ambulance

to Mount Nittany Hospital in State College, Pennsylvania. Id. He states that he "was in such excruciating pain, the paramedics had to give him 10 ccs of fentanyl and once Plaintiff arrived at the hospital and was examined by a doctor, Plaintiff was informed that he had sustained second degree burns, multiple contusions, laceration and blisters over forty-five percent of his body." Id.

Plaintiff filed the instant action seeking compensatory and punitive damages, claiming that Defendant Ritchner, "knew or should have known to have Plaintiff stand clear of the hot water boiler for safety measures before the valve was shut off" and that "Mr. Ritchner's failure to do so caused Plaintiff to sustain his injuries." Id. Plaintiff also believes that the hot water explosion that occurred and injured Plaintiff was due to Defendant Detwieller's "failure to inspect the previous maintenance work done in the same area and properly tag the valve as a lockout valve." Id. He concludes that "on May 2, 2017, Douglas R. Sampsel went back and back dated the lockout tag for January 5, 2017 in order to cover up Mr. Ritchner's and Mr. Detweiller's failures in performing their duties." Id.

**III.    MOTION TO DISMISS**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule

12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

IV. **DISCUSSION**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. §1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Id*.;* see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under §1983,

- 5 -

a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

A defendant must be shown by the allegations contained in the complaint to have been personally involved or have actual knowledge of and acquiescence in the commission of the wrong. See Rizzo v. Goode, 423 U.S. 362 (1976). Liability can only be imposed if that official played an "affirmative part" in the complained of misconduct. See Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). This concept was reaffirmed in Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005). The "personal involvement" requirement has long been established in the Third Circuit. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Supervisory liability does not constitute a constitutional violation. Id.

Initially, the Court notes that the only allegation against Defendant, Superintendent Garman is that he "is legally responsible for the operation of SCI-Rocview and for the welfare of all the inmates in that prison." (Doc. 24). Such allegation does not demonstrate any personal involvement and seeks to impose liability solely on the basis of *respondeat superior*, which cannot form the basis of a civil rights claim under §1983. See Rode, 845 F.2d at

1207. Thus, Defendant Garman is entitled to dismissal from the above captioned action.

Remaining Defendants seek dismissal, claiming Sanchez failed to establish a violation of the Eighth Amendment. (Doc. 18, pp. 7-13). The Eighth Amendment protects prison inmates from cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

Moreover, an Eighth Amendment violation premised upon a failure to protect an inmate from a dangerous physical condition inside a prison, must provide that in this setting:

> Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." A defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." Negligence does not satisfy the "deliberate indifference" standard, and it is not enough to show that a prison guard merely failed to act reasonably. Deliberate indifference can be inferred only where defendants know there is a strong likelihood rather than a mere possibility that violence will occur. Prison officials cannot be expected to eliminate the possibility of all dangers. Thus, the right to reasonable protection does not include the right to protection from random acts.

[Barrand v. Donahue, No. 06–694, 2006 WL 2982051, *2 (N.D.Ind.Oct.16, 2006)](#) (citations omitted).

Sanchez alleges that Defendant Ritchner was deliberately indifferent to his health and safety when he failed to "have Plaintiff stand clear of the hot water boiler for safety measures before the valve was shut off" and for Defendant Detwieller's "failure to inspect the previous maintenance work done in the same area and properly tag the valve as a lockout valve." (Doc. 24).

As to the subjective prong, Sanchez has not established that Defendants were deliberately indifferent to his health or safety. Sanchez has not provided any allegation that Defendants were aware of the alleged malfunctioning valve creating a potentially hazardous condition and risk of serious harm, or that Defendants deliberately failed to take appropriate action. In fact, Plaintiff, himself, alleges that Defendant Ritchner was standing right next to Plaintiff when the accident occurred, thus jeopardizing his own health and safety. At most, Plaintiff has alleged that Defendants were negligent, but "negligence does not transform into a constitutional claim solely because it is committed under color of state law." Thomas v. Zinkel, 155 F.Supp.2d 408, 414 (E.D. Pa. 2001) (granting defendants' motion to dismiss where pro se plaintiff" use[d] the constitutional code words 'deliberate indifference'" but alleged only that prison officials knew of water leak and should have repaired it); see also Denz v. Clearfield County, 712 F.Supp. 65, 66 (W.D. Pa. 1989) (granting defendant's motion to dismiss where prisoner inserted the phrase "eliberate, willful and wanton" but alleged only that defendant failed to repair his inadequately ventilated cell). Zinkel, 155 F.Supp.2d at 414 (citing Estelle, 429 U.S. at 105-06). Santiago v. Guarin*i*, 2004 WL 2137822, *2 (E.D. Pa. 2004).

Finally, to the extent that Plaintiff alleges that he "believes" Defendant Sampsel "went back and back dated the lock out tag for January 5, 2017 in order to cover up Mr. Ritchner's and Mr. Detwieller's failures in performing their duties", (see Doc. 24 at 16), this sort of after the incident action does not impart the requisite knowledge contemplated by Farmer. See Farmer, 511 U.S. at 837) (finding that the requirement of actual knowledge on the part of supervisory officials means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Thus, the Plaintiff failed to establish that the deprivation alleged was objectively, sufficiently serious, and that Defendants acted with deliberate indifference to an excessive risk to his health and/or safety as required by Farmer. Consequently, the Court will grant Defendants' motion to dismiss Plaintiff's amended complaint.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* complaint that any attempt to amend the plaintiff's §1983 claims against the named Defendants would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion to dismiss. A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 13, 2020**
18-1555-01